# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRICE BENNETT,                          :
    Plaintiff              :
                            :          No. 1:17-cv-00366
    v.                     :
                            :          (Judge Kane)
MATT FINK, <u>et</u> <u>al.</u>,        :
    Defendants             :

## MEMORANDUM

Before the Court is Defendant Patricia Bennett ("Bennett")'s motion to dismiss <u>pro</u> <u>se</u> Plaintiff Brice Bennett ("Plaintiff")'s amended complaint (Doc. No. 15), Plaintiff's motion to change the caption of this case and Plaintiff's address (Doc. No. 36), and Plaintiff's fourth motion to appoint counsel (Doc. No. 40). For the reasons that follow, the Court will grant Bennett's motion to dismiss and dismiss Bennett from this action with prejudice. The Court will deem Plaintiff's motion to change the caption of this action withdrawn, deny Plaintiff's motion to change his address as moot, and deny without prejudice Plaintiff's fourth motion for appointment of counsel.

## I. BACKGROUND

On February 27, 2017, Plaintiff, an inmate currently incarcerated at the State Correctional Institution at Mahanoy, Frackville, Pennsylvania ("SCI-Mahanoy"), filed a complaint pursuant to 42 U.S.C. § 1983 against three correctional officers employed at York County Prison ("YCP"). (Doc. No. 1.) On March 21, 2017, Plaintiff filed an amended complaint naming a deputy warden, four correctional officers, and a registered nurse employed at YCP. (Doc. No. 8.) Plaintiff alleges that on an unidentified date, a correctional officer purposely did not wake him to administer a diabetes "Accu-Check" so that Plaintiff would die. (<u>Id.</u> ¶ 10.) Plaintiff asserts that on the same date, Nurse Eva Carroll accompanied him to medical for his 3:01 p.m. Accu-Check,

1

but that no one else tried to help him.  (Id. ¶¶ 11, 12.)  Plaintiff alleges that his eyes were blurry,

that he was sleepy, dizzy, and weak, and that he urinated a lot.  (Id. ¶ 13.)  Plaintiff claims that

the defendants failed to provide him with adequate medical care for his diabetes in violation of

his Eighth Amendment rights.  (Id. ¶¶ 21-26.)  Specifically, regarding Bennett, Plaintiff alleges

that Bennett is responsible for ensuring that the nursing department provide him with an Accu-

Check twice a day.  (Id. ¶ 7.)  Plaintiff also claims that Bennett said "on my returning to prison

my diabetes was brittle."  (Id. ¶ 14.)

On June 8, 2017, Bennett filed a motion to dismiss Plaintiff's amended complaint.  (Doc.

15.)  On August 4, 2017, Plaintiff filed a motion to amend the complaint and respond to

Bennett's motion to dismiss.  (Doc. No. 21.)  The remaining Defendants filed an answer to the

amended complaint on August 16, 2017.  (Doc. No. 24.)  The Court denied Plaintiff's motion to

file an amended complaint on September 25, 2017, but granted Plaintiff twenty (20) days to file a

proper motion to amend in accordance with Middle District Local Rule 15.1(a).  (Doc. No. 29.)

Plaintiff failed to file a second amended complaint in accordance with this Court's

September 25, 2017 Order, and consequently, the Court ordered Plaintiff to file a brief in

opposition to Bennett's motion to dismiss.  (Doc. No. 32.)  Plaintiff subsequently filed an

oppositional brief on November 20, 2017.  (Doc. No. 34.)  Additionally, Plaintiff filed a motion

to change the caption of this case and his address (Doc. No. 36), an "additional supplement to

second amended complaint to motion to dismiss Pat Bennett" (Doc. No. 39),[1] and a fourth

motion to appoint counsel (Doc. No. 40).

---

[1] Docket Number 39, through which Plaintiff appears to set forth a "Second Amended
Complaint" against several officials who are not parties to the instant case, will not be
entertained by this Court, as it is improvidently filed and in violation of Middle District Local
Rule 15.1(a).  Local Rule 15.1(a) requires that a party must file a proposed amended pleading as
an attachment to a motion.  L.R. 15.1(a).  Plaintiff has not done so here and "cannot evade these

## II.  LEGAL STANDARD

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  <u>See</u> Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010).  To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct:  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion:  (1) identify the

---

litigation responsibilities . . . simply [because] he is a <u>pro</u> <u>se</u> litigant."  <u>McClain v. Kale</u>, Civ. No. 10-0035, 2013 WL 5272816, at *7 (M.D. Pa. Sept. 17, 2013).

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, a court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.      Plaintiff's Claims Asserted Under 42 U.S.C. § 1983**

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., Civ. No. 08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009). Liability may not be imposed under § 1983 on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

## III.  DISCUSSION

### A.  Bennett's Motion to Dismiss

Bennett claims that Plaintiff's amended complaint alleging deliberate indifference to a serious medical need should be dismissed for failure to state a claim upon which relief may be granted. (Doc. No. 16 at 4.)  In support of her motion, Bennett refers to the only two paragraphs of the amended complaint in which she is mentioned. (Id. at 6.)  Specifically, paragraph 7 of the amended complaint states that Bennett oversees the nursing department, which is tasked with ensuring that Plaintiff receives his Accu-Check (Doc. No. 8 ¶ 7), and paragraph 14 alleges that

after Plaintiff was taken to medical, purportedly for his Accu-Check, Bennett "said on [his] returning to prison [that his] diabetes was brittle" (Id. ¶ 14).

The Court finds support for Bennett's contention. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the relevant official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally withholds it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").  If a dispute exists as to the adequacy of the treatment received, courts are reluctant to second guess the medical judgment of the attending physician.  Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference.  Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  The question is thus "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants."  Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cty., 834 F.2d at 347.  Not every condition is a serious medical need; instead, this element contemplates a condition of urgency, namely, one

that may produce death, degeneration, or extreme pain.  See id.  For example, courts have indicated that minor abrasions, even those involving bleeding, do not rise to the level of objectively serious medical needs.  See Wisneski v. Denning, Civ. No. 12-864, 2014 WL 1758118, at *22 (W.D. Pa. Apr. 30, 2014).

The Court concludes that Plaintiff has failed to allege that Bennett: (1) intentionally refused to provide medical treatment; (2) delayed necessary medical treatment for a non-medical reason; or (3) prevented Plaintiff from receiving needed or recommended medical treatment.  See Rouse, 182 F.3d at 197.  Indeed, Plaintiff's sole allegations against Bennett are that Bennett oversees the nursing department, which is tasked with ensuring that Plaintiff receives his Accu-Check (Doc. No. 8 ¶ 7), and that after Plaintiff was taken to medical, purportedly for his Accu-Check, Bennett "said on [his] returning to prison [that his] diabetes was brittle" (Id. ¶ 14). Viewing the facts and all reasonable inferences in a light most favorable to Plaintiff, the Court concludes that Plaintiff has not set forth sufficient allegations to support his claim that Bennett was deliberately indifferent to his serious medical needs.

To the extent that Plaintiff alleges Bennett is vicariously liable for the deliberate indifference of others, Plaintiff's claim fails in this regard as well.  Liability may not be imposed under § 1983 under a traditional standard of respondeat superior.  Marinelli, 868 F.2d at 106 (citing Holmesburg Prison Officials, 546 F.2d at 1082).  Instead, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  Capone, 868 F.2d at 106 n.7.  The Court concludes that Plaintiff has failed to allege any personal involvement on the part of Bennett.  Plaintiff also fails to allege that Bennett, with deliberate indifference to the consequences, "established and maintained a

policy, practice or custom which directly caused [the] constitutional harm." See <u>A.M. ex rel.</u>
<u>J.M.K.</u>, 372 F.3d at 586.

Moreover, Plaintiff concedes that the basis for his deliberate indifference claim is that he
was brought to medical by Nurse Eva Carroll for his Accu-Check. (Doc. Nos. 8 ¶ 11; 16 at 8.)
Consequently, to the extent Plaintiff disagrees with the adequacy of his treatment, such a
disagreement does not form the basis of a deliberate indifference claim. See <u>Pearson</u>, 850 F.3d
at 535 ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper
absent evidence that it violates professional standards of care."); <u>Caldwell</u>, 732 F. Supp. 2d at
472 ("Courts will not second guess whether a particular course of treatment is adequate or
proper."); <u>Jacobs</u>, 2016 WL 344431, at *4 (stating that the relevant inquiry is "whether the
defendant has provided the plaintiff with some type of treatment, despite whether it is what
plaintiff wants"). Accordingly, the Court will grant Defendant Bennett's motion to dismiss
Plaintiff's amended complaint (Doc. No. 15).[2]

### B. Plaintiff's Motion to Change the Case Caption and Plaintiff's Address

---

[2] Although courts are cautioned that a plaintiff should generally be granted leave to amend
before dismissing a claim that is merely deficient, Grayson v. Mayview State Hosp., 293 F.3d
103, 108 (3d Cir. 2002), courts may decline to permit leave to amend when there is "undue
delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies
by amendments previously allowed, undue prejudice to the opposing party by virtue of
allowance of the amendment, [or] futility of the amendment." Foman v. Davis, 371 U.S. 178,
182 (1962). A court must also determine whether a proposed amendment would be futile if the
complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon
which relief may be granted. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).
Based on the foregoing, the Court finds that such amendment would not only produce an undue
delay, as Plaintiff has already amended his complaint and failed to file a second amended
complaint when ordered to do so (Doc. No. 29), but also that any amendment would be futile as
to any claim against Bennett because the claim is not supported by facts that rise to the level of a
constitutional violation.

On November 30, 2017, Plaintiff filed a motion entitled "motion to change caption and address." (Doc. No. 36.) It appears that the purpose of this motion is to add Mary Sabol as a Defendant in this action and to inform the Court of his address change to reflect his current incarceration at SCI-Mahanoy. (Id.) The Court will deem this motion withdrawn in part as it relates to changing the caption of this matter because Plaintiff has failed to file a brief in support as required by the Middle District's Local Rule of Civil Procedure 7.5. See L.R. 7.5 ("If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."). Further, the Court will deny the remainder of the motion as moot, given that Plaintiff's address has already been updated to SCI-Mahanoy, as indicated on the docket.

### C.    Plaintiff's Fourth Motion for Appointment of Counsel

On January 19, 2018, Plaintiff filed his fourth motion for appointment of counsel. (Doc. No. 40.) In support of his motion, Plaintiff alleges that he is unable to afford counsel, that his imprisonment will greatly limit his ability to litigate this action, that the issues involved in this action are complex and he possesses only limited access to the prison library and knowledge of the law, that a trial will likely involve conflicting testimony, and that he has made repeated unsuccessful efforts to obtain counsel. (Doc. No. 40.) The Court addressed these contentions in its July 18, 2017 Order denying Plaintiff's previous motions for appointment of counsel without prejudice. (Doc. No. 20.) Because Plaintiff has not asserted any new argument or shown a change in circumstances that would warrant a departure from the Court's July 18, 2017 Order, the Court concludes that appointment of counsel is not warranted at this time. (Id.) Accordingly, Plaintiff's motion for appointment of counsel (Doc. No. 40), is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant Patricia Bennett's motion to dismiss Plaintiff's amended complaint (Doc. No. 15), is granted. Plaintiff's motion to change the caption of this action is deemed withdrawn, and his motion to change his address is denied as moot. (Doc. No. 36.) Plaintiff's fourth motion for appointment of counsel (Doc. No. 40), is denied without prejudice. An appropriate Order follows.

<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania